Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| JOSÉ VÁZQUEZ MARÍN<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrida | KLRA202500023 | *Revisión* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.:<br>B-1224-24<br><br>Sobre:<br>Servicio de Capellanía |

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 24 de febrero de 2025.

Comparece José Vázquez Marín (en adelante, recurrente) mediante un recurso de revisión para solicitarnos la revisión de la *Resolución en Reconsideración* (Resolución) emitida el 26 de noviembre de 2024, y notificada el 11 de diciembre de 2024, por el Departamento de Corrección y Rehabilitación (en adelante, DCR).[1] Mediante la *Resolución* recurrida, el DCR confirmó *la Repuesta al Miembro de la Población Correccional* en la cual se desestimó su solicitud de remedio administrativo.

Por los fundamentos que expondremos, se *confirma* la *Resolución* recurrida.

I

El presente caso inició cuando el recurrente instó una *Solicitud de remedio administrativo* ante el DCR.[2] En síntesis, adujo que el sargento Torres Méndez estaba "haciendo lo que le da la gana con los cultos de la capellanía protestante" y que este le indicó que

---

[1] Expediente Administrativo, a las págs. 14-16.
[2] *Íd.,* a las págs. 5-6.

Número Identificador

SEN2025_____

mientras el recurrente estuviese usando drogas y durmiendo en la iglesia no iba a dar culto en la capilla.[3] Esbozó que le indicó que el sargento Torres Méndez le cerró la puerta en la cara y que no resolvió nada.

De ahí, el DCR suscribió la *Respuesta al miembro de la población correccional* (Respuesta),[4] en la cual se desestimó la solicitud instada por el recurrente. La respuesta le fue notificada al recurrente el 20 de septiembre de 2024. En la *Respuesta,* se expresó lo siguiente:

> REGLA XIII SECCI[Ó]N 5 INCISO (G) – EL EVALUADOR TIENE LA FACULTAD PARA DESESTIMAR LAS SIGUIENTES SOLICITUDES:
>
> A – CUANDO EL MIEMBRO DE LA POBLACI[Ó]N CORRECCIONAL EMITA OPINIONES O SOLICITE INFORMACI[Ó]N EN SU SOLICITUD QUE NO CONLLEVE A REMEDIAR UNA SITUACI[Ó]N DE SU CONFINAMIENTO. SR. VAZWQUEZ,[5] LE EXORTO A QUE NO EMITA OPINIONES O COMENTARIOS SOBRE LOS FUNCIONARIOS, SOLO PRESENTE LOS HECHOS.[6]

Inconforme con la *Respuesta,* el recurrente presentó una *Solicitud de reconsideración.*[7] En resumen, acotó que la respuesta emitida era una irrazonable, contradictoria e ilegal y solicitó que se le brindara una solución a la controversia planteada en su solicitud de remedio administrativo. Así las cosas, el 29 de octubre de 2024, el recurrente fue notificado de la *Respuesta de reconsideración al miembro de la población correccional,*[8] mediante la cual se acogió la solicitud de reconsideración.

A tenor, el 26 de noviembre de 2024, el DCR emitió una *Resolución en reconsideración,*[9] la cual fue notificada al recurrente el 11 de diciembre de 2024.[10] Mediante la antedicha determinación, el DCR confirmó la *Respuesta al miembro de la población*

---

[3] Expediente Administrativo, a la pág. 5.
[4] *Íd.,* a la pág. 7.
[5] *Sic.*
[6] Expediente Administrativo, a la pág. 7.
[7] *Íd.,* a las págs. 9-11.
[8] *Íd.,* a las págs. 12-13.
[9] *Íd.,* a las págs. 14-16.
[10] *Íd.,* a la pág. 16.

*correccional*, mediante la cual se desestimó la solicitud de remedio administrativo.

Como parte de la antedicha *Resolución en reconsideración*, el DCR emitió las siguientes cuatro (4) determinaciones de hechos:

1. El recurrente present[ó] Solicitud de Remedios Administrativos el 6 de septiembre de 2024 ante el Evaluador de Remedios Administrativos Maribel García Charriez de la Oficina de Bayamón. En su escrito expone situación surgida con el Sargento Torres Méndez en cuanto a los cultos de la capellanía.
2. El 9 de septiembre de 2024 la Sra. Maribel García Charriez, Evaluadora de Remedios Administrativos Oficina de Bayamón, desestimando la solicitud por la Regla XIII, sección 5, Inciso g del Reglamento Para Atender Las Solicitudes De Remedios Administrativos Radicadas Por Los Miembros De La Poblaci[ó]n Correccional.
3. El 20 de septiembre de 2023 se hace la entrega al recurrente del Recibo de Respuesta al miembro de la población correccional.
4. El 26 de septiembre de 2024, el recurrente inconforme con la respuesta emitida present[ó] Solicitud de Reconsideración ante el Coordinador Regional de Remedios Administrativos. En síntesis, arguye que no est[á] de acuerdo con la desestimación de la solicitud.[11]

Además, como parte del dictamen emitido, el DCR le informó al recurrente que la situación fue dilucidada con el Área de Supervisión de la Institución Correccional Bayamón 501 en donde les fue indicado que la situación referida por el recurrente ya había sido planteada y se habían impartido instrucciones al Sargento Torres Méndez en cuanto a los protocolos a seguir en cuanto a las capellanías protestantes.[12]

Inconforme, el 13 de enero de 2025, el recurrente presentó un recurso de revisión en el cual esgrimió la comisión de los siguientes dos (2) errores:

Primer error:

> Erró la División de Remedios Administrativos al concluir y determinar que la Regla XIII – sección 5 – inciso G, puede restringir, anular, suprimir o neutralizar cualquier derecho constitucional especialmente contra los derechos constitucionales denominados fundamentales como lo es la Primera Enmienda de la Constitución de los Estados Unidos y la [C]onstitución del Estado Libre Asociado de Puerto Rico – Artículo II – sección 1 amparados en la Regla XIII – sección 5 – inciso G[,] la cual utiliza la Agencia como un arma letal o escudo de protección que tiene el alcan[c]e y potencial de

---

[11] Expediente Administrativo, a la pág. 14.
[12] *Íd.,* a la pág. 15.

restringir, suprimir, anular los derechos de la libertad de expresión y libertad de pensamiento.

Segundo error:

Err[ó] la División de Remedios Administrativos al concluir y determinar que confirm[ó] [y] ampli[ó] la respuesta recibida luego de una investigación realizada la cual no sabemos c[ó]mo se dio y c[ó]mo se llev[ó] a cabo dicha investigación, dadas las circunstancias que el sargento Torres Méndez contin[ú]a oponi[é]ndose y restringiendo la religión de culto de la Iglesia Protestante y la Iglesia Libres en Cristo sin consecuencia alguna. Es decir, la orientación que se le dio al sargento Torres M[é]ndez no fue una adecuada, ni eficaz y que[,] de no haber sido por ello, el recurrente hubiera des[i]stido de llevar sus reclamos al Tribunal.

Junto al recurso instado, el recurrente presentó, además, una solicitud para litigar como indigente, la cual fue concedida mediante *Resolución* emitida el 24 de enero de 2025.

En la antedicha fecha, también concedimos al DCR hasta el 30 de enero de 2025, para presentar copia certificada del expediente administrativo relacionado al caso de autos. Además, concedimos al DCR, por conducto de la Oficina del Procurador General hasta el 12 de febrero de 2025, para exponer su posición en cuanto al recurso.

En cumplimiento con lo ordenado, el 30 de enero de 2025, compareció el DCR para presentar copia certificada del expediente administrativo. Por otro lado, el 11 de febrero de 2025, compareció el DCR, por conducto de la Oficina del Procurador General para presentar su *Escrito en cumplimiento de Resolución.* Con el beneficio de la comparecencia de ambas partes procederemos a exponer el derecho aplicable.

II

**A. Revisión Judicial**

El Tribunal Supremo de Puerto Rico ha sostenido que el derecho a cuestionar la determinación de una agencia, mediante revisión judicial, es parte del debido proceso de ley protegido por la Constitución de Puerto Rico.[13] El Artículo 4.006 (c) de la Ley de la

---

[13] *Asoc. Condómines v. Meadows Dev.,* 190 DPR 843, 847 (2014); *Picorelli López v. Depto. de Hacienda,* 179 DPR 720, 736 (2010).

Judicatura del Estado Libre Asociado de Puerto Rico[14] otorga competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas.[15] La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme a la ley y de forma razonable.[16] Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados, y si son compatibles con la política pública que las origina.[17] A esos efectos, la revisión judicial comprende tres (3) aspectos: (i) la concesión del remedio apropiado; (ii) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial, y (iii) la revisión completa y absoluta de las conclusiones de derecho.[18] Nuestro Alto Foro ha establecido que el derecho a una notificación adecuada concede a las partes la oportunidad de tomar conocimiento real de la acción tomada por la agencia. Además, otorga a las personas, cuyos derechos pudieran quedar afectados, la oportunidad para decidir si ejercen los remedios que la ley les reserva para impugnar la determinación.[19]

Dentro de este marco, los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias, debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[20] Igualmente, el Alto Foro ha enfatizado que los tribunales, aplicando el criterio de razonabilidad y deferencia, no

---

[14] Ley Núm. 201-2003, 4 LPRA sec. 24y(c).
[15] *Asoc. Condómines v. Meadows Dev.*, supra, a la pág. 847.
[16] *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 264 (2007).
[17] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).
[18] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010); *Mun. de. San Juan v. JCA*, 149 DPR 263, 279-280 (1999).
[19] *Asoc. Vec. Altamesa Este v. Municipio de San Juan*, 140 DPR 24, 34 (1996).
[20] *Rolón Martínez v. Supte. Policía*, supra, a la pág. 35.

deben alterar las determinaciones de las agencias.[21] En mérito de lo anterior, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[22] Ahora bien, lo anterior únicamente surtirá efecto si la decisión se basa en evidencia sustancial que obra en el expediente administrativo.[23] En cuanto a la evidencia sustancial, se ha definido como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[24] Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto aquella que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido.[25] Ello, implica que, de existir un conflicto razonable en la prueba, debe respetarse la apreciación de la agencia.[26] Además, la norma de prueba sustancial se sostiene en la premisa de que son las agencias las que producen y determinan los hechos en los procesos administrativos, y no los tribunales.[27]

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones.[28] Para ello, deberá demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su

---

[21] *Rolón Martínez v. Supte. Policía*, supra, a la pág. 35.

[22] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).

[23] *Otero v. Toyota*, 163 DPR 716, 727 (2005).

[24] *Batista, Nobbe v. Jta. Directores,* supra, a la pág. 216; *Otero v. Toyota*, supra, a la pág. 728.

[25] *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 437 (1997).

[26] *Hilton v. Junta de Salario Mínimo*, 74 DPR 670, 687 (1953).

[27] Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, Ed. Forum, 2013.

[28] *OEG v. Martínez Giraud*, 210 DPR 79, 89 (2022); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 128 (2019); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

consideración.[29] Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el Tribunal respetará las determinaciones de hecho, y no sustituirá el criterio de la agencia por el suyo.[30] En cambio, las conclusiones de derecho son revisables en todos sus aspectos.[31] En esta tarea, los tribunales están compelidos a considerar la especialización y la experiencia de la agencia con respecto a las leyes y reglamentos que administra.[32] Así pues, si el fundamentos de derecho no conlleva interpretación dentro del marco de la especialidad de la agencia, entonces el mismo es revisable en toda su extensión.[33]

Sin embargo, aun cuando el Tribunal tiene facultad para revisar en todos sus aspectos las conclusiones de derecho de una agencia, se ha establecido que ello no implica que los tribunales revisores tienen la libertad absoluta para descartarlas libremente.[34] Si del análisis realizado se desprende que la interpretación que hace una agencia de su reglamento o de la ley que viene llamada a poner en vigor resulta razonable, el Tribunal debe abstenerse de intervenir.[35] Ahora bien, la deferencia reconocida a las decisiones de las agencias administrativas cede en algunas situaciones: (i) cuando la decisión no esté basada en evidencia sustancial; (ii) cuando la agencia haya errado en la aplicación de la ley; (iii) cuando su actuación resulte ser arbitraria, irrazonable o ilegal; y, (iv) cuando la actuación administrativa lesiona derechos constitucionales fundamentales.[36] Entiéndase que, aunque los tribunales están

---

[29] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).
[30] *Otero v. Toyota*, supra, a la pág. 728.
[31] *García Reyes v. Cruz Auto Corp.*, supra, a la pág. 894.
[32] *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75-76 (2000).
[33] *Rivera v. A & C Development Corp.*, 144 DPR 450, 461 (1997).
[34] *Federation Des Ind. v. Ebel*, 172 DPR 615, 648 (2007); *López Borges v. Adm. Corrección*, 185 DPR 603, 626 (2012).
[35] *Cruz v. Administración*, 164 DPR 341, 357 (2005).
[36] *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 822 (2012), citando a *Empresas Ferrer v. A.R.Pe.*, supra.

llamados a conceder deferencia a las decisiones administrativas, tal norma no es absoluta. Ello, puesto a que no puede imprimírsele un sello de corrección automático, bajo el pretexto de deferencia, a determinaciones o interpretaciones administrativas que son irrazonables, ilegales o contrarias a derecho.[37]

**B. Solicitudes de Remedios Administrativos Radicadas por la Población Correccional**

La División de Remedios Administrativos del Departamento de Corrección y Rehabilitación (División) se estableció con el propósito principal de proveerles a los miembros de la población correccional un organismo administrativo al cual puedan recurrir en primera instancia, mediante una solicitud de remedio. Ello, con el fin de minimizar las diferencias entre los miembros de la población correccional y el personal, y para evitar o reducir la presentación de pleitos en los Tribunales de Justicia.[38] A tenor, la División se encarga, esencialmente, de atender quejas y agravios de los confinados, en contra del DCR o sus funcionarios, sobre asuntos tales como: (i) agresiones físicas, verbales y sexuales; (ii) propiedad de confinados; (iii) plan de recreación; (iv) ejercicios; (v) uso de biblioteca para fines recreativos, entre otros.[39]

Ahora bien, la División, asumirá jurisdicción sobre aquellas solicitudes de remedio presentadas por un miembro de la población correccional con el fin de que se atienda un asunto relacionado a su confinamiento, que lo afecte personalmente en su bienestar físico o mental, calidad de vida, seguridad o plan institucional.[40] A esos efectos, se entenderá que una solicitud es fútil o insustancial cuando se radique sin méritos y no propicie la concesión de un

---

[37] *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743, 754 (2024).
[38] Introducción del Reglamento para Atender Solicitudes de Remedios Administrativos Radicados por los Miembros de la Población Correccional, Reglamento Núm. 8583 del 4 de mayo de 2015.
[39] *Íd.*
[40] Reglamento Núm. 8583, *supra,* R. IV (24) y R. VI (1)(a); *Vargas Serrano v. Inst. Correccional,* 198 DPR 230, 243 (2017).

remedio al amparo del Reglamento Núm. 8583.[41] Particularmente, la Regla XIII del Reglamento Núm. 8583, dispone que el evaluador de la solicitud tendrá la facultad para desestimarla cuando el miembro de la población correccional emita opiniones que no estén dirigidas a remediar una situación relacionada con su confinamiento.[42] Habida cuenta de ello, los miembros de la población correccional serán responsables de presentar las solicitudes de remedio en forma clara, concisa y honesta.[43]

III

En el presente caso, el recurrente nos solicita la revisión de la *Resolución* recurrida puesto a que, en suma, entiende que la *Respuesta* a su solicitud de remedio administrativo resulta irrazonable, contraria a derecho e ilegal. Tras examinar el recurso ante nuestra consideración, así como el expediente administrativo y las posturas de las partes, colegimos que no amerita que intervengamos con la respuesta emitida por el DCR. Nos explicamos.

Conforme esbozamos en nuestra previa exposición doctrinal, al ejercer nuestra facultad revisora, debemos conceder una gran deferencia a las decisiones emitidas por los organismos administrativo, puesto que ostentan vasta experiencia y conocimiento en los asuntos que le han sido encomendados. Por ello, si del análisis realizado se desprende que la interpretación que hace una agencia resulta razonable, debemos abstenernos de intervenir. Ahora bien, se justificará nuestra intervención cuando: (i) la decisión no esté basada en evidencia sustancial; (ii) la agencia haya errado en la aplicación de la ley; (iii) su actuación resulte ser arbitraria, irrazonable o ilegal, y cuando (iv) la actuación administrativa lesiona derechos constitucionales fundamentales.

---

[41] Reglamento Núm. 8583, *supra,* R. IV (25).
[42] *Íd.,* R. XIII (5)(g).
[43] *Íd.,* R. VII (1).

En el caso que nos ocupa, el DCR, luego de evaluar la *Solicitud de Remedio Administrativo* presentada por el recurrente, determinó desestimarla al concluir que, el señor Vázquez Marín, emitió opiniones que no estaban dirigidas a remediar una situación relacionada con su confinamiento. Según explicamos anteriormente, la División asumirá jurisdicción sobre aquellas solicitudes de remedio presentadas por un miembro de la población correccional con el fin de que se atienda un asunto relacionado a su confinamiento, que lo afecte personalmente en su bienestar físico o mental, calidad de vida, seguridad o plan institucional.[44] A tenor, la Regla XIII del Reglamento Núm. 8583, dispone que el evaluador de la solicitud tendrá la facultad para desestimarla cuando el miembro de la población correccional emita opiniones que no estén dirigidas a remediar una situación relacionada con su confinamiento.[45]

Así las cosas, en reconsideración a su respuesta, el DCR, confirmó y amplió su decisión. Allí, exhortó al recurrente a limitarse a compartir los hechos y abstenerse de emitir opiniones contra el sargento Torres Méndez. Además, le informó que la situación había sido discutida con el Área de Supervisión de la Institución Correccional Bayamón 501, en donde les fue indicado que la situación referida por el recurrente ya había sido atendida. Por otro lado, se confirmó que se impartieron instrucciones al sargento Torres Méndez respecto a los protocolos a seguir con relación a las capellanías protestantes.

En vista de lo antes expuesto, coincidimos que la respuesta y la actuación de la agencia fue una razonable, puesto que, según adelantamos, hemos acordado no intervenir con la determinación emitida por la agencia.

---

[44] Reglamento Núm. 8583, *supra,* R. IV (24) y R. VI (1)(a); *Vargas Serrano v. Inst. Correccional,* supra, a la pág. 243.
[45] Reglamento Núm. 8583*, supra,* R. XIII (5)(g).

IV

Por los fundamentos que anteceden, se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones